**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

INA WATKINS,

        Plaintiff,

vs.                                                CASE NO. 3:10-cv-100-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

_____/

**ORDER AND OPINION**

This matter is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income payments ("SSI"). Plaintiff filed a brief in opposition to the Commissioner's decision (Doc. #17), and Defendant filed a brief in support of the decision to deny disability benefits (Doc. #18). The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number).

The undersigned has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings. Upon review of the record, the undersigned found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the undersigned in making his determinations.

Accordingly, the instant matter has been decided on the written record. For the reasons set out herein, **the Commissioner's decision is AFFIRMED**.

## I. Procedural History

On October 7, 2003, Plaintiff filed applications for both DIB and SSI, alleging disability beginning October 6, 2003 (Tr. 90, 94-96). After conducting a hearing, Administrative Law Judge Apolo Garcia ("ALJ Garcia") issued an unfavorable decision on October 31, 2005 (Tr. 41-48). The Appeals Council reviewed ALJ Garcia's decision and issued a remand (Tr. 74-75). ALJ Garcia issued a second unfavorable decision on December 5, 2006 (Tr. 15-27). After the Appeals Council declined review, Plaintiff appealed to this Court (Tr. 375). In a decision dated January 22, 2009, this Court reversed ALJ Garcia's December 5, 2006 decision and remanded the case for further review (Tr. 375-90); *see also Watkins v. Astrue*, 3:07-cv-1079-J-16MCR (M.D. Fla. Jan. 22, 2009) (Doc. #19). Thereafter, a supplemental hearing was held on June 10, 2009 before ALJ Robert D. Marcinkowski ("the ALJ") (Tr. 461-92). Plaintiff appeared and testified, as did vocational expert Richard J. Hickey ("the VE"). The ALJ issued an unfavorable decision on November 25, 2009 (Tr. 359-61). Plaintiff now appeals pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) (Doc. #1).

## II. Standard of Review

A plaintiff is entitled to disability benefits under the Social Security Act if he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A).

For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits. *Patterson v. Bowen*, 799 F.2d 1455, 1456, n. 1 (11th Cir. 1986). The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. §§ 404.1520(a)(4)(i-v); 416.920(a)(4)(i-v)[1]; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's

---

[1] All references made to 20 C.F.R. will be to the 2010 edition unless otherwise specified.

decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, Plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require"). It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove disabling physical or mental functional limitations. 20 C.F.R. §§ 404.1512(c); 416.912(c).

### III. Background Facts

On November 1, 1988, Plaintiff was injured while working at Alachua General Hospital (Tr. 143). She was moving a tray of orthopaedic instruments on an overhead shelf when the tray began to fall on her (Tr. 143). While attempting to prevent the tray from striking her on the head, Plaintiff reached up and injured her neck, left shoulder, and left arm (Tr. 143, 159). She instantly began to feel pain in her left arm, which increased over time (Tr. 143). Subsequently, Plaintiff underwent three separate cervical fusion surgeries. Specifically, Plaintiff underwent an anterior cervical fusion of the C4-C7 in March 1989, a revision of the anterior cervical fusion, *supra*, in April 1991, and a posterior cervical fusion of the C4-C7 in December 1991 (Tr. 143-44). These procedures improved, but did not alleviate Plaintiff's symptoms of pain (Tr. 143). After these surgeries, Plaintiff underwent various treatment modalities, such as taking time off work with rest at home, physical therapy, anti-inflammatory medication, pain medication, and cervical traction (Tr. 143).

On August 29, 2002, Plaintiff presented to neurosurgeon, Joseph Cauthen, M.D. ("Dr. Cauthen"), complaining of neck pain (Tr. 143). At that time, she was not receiving treatment for her neck pain and continued to work (Tr. 143). Although Plaintiff had limited range of motion, she had full muscle strength in all muscles tested, including her biceps, triceps, and grip (Tr. 145-46).

On August 7, 2003, Plaintiff presented to Thomas Wright, M.D. ("Dr. Wright"), complaining of wrist pain (Tr. 150-51). Dr. Wright believed Plaintiff demonstrated bilateral carpal tunnel syndrome and possible cubital tunnel syndrome (Tr. 150). Dr. Wright stated Plaintiff should be limited to light duty work due to her hands, and that she was not to engage in any heavy lifting (Tr. 151).

5

On October 13, 2003, Plaintiff presented to neurologist, George Feussner, M.D., P.A. ("Dr. Feussner"), for an independent medical evaluation (Tr. 159). Plaintiff complained of pain in her shoulders, arms, and hands (Tr. 159).  Plaintiff's only medication was Celebrex (Tr. 159).  Upon examination, Dr. Feussner noted Plaintiff had reduced range of motion of the cervical spine (Tr. 160).  She also had a reduction in grip strength and a sensory distribution compatible with median nerve injury (Tr. 160).  Plaintiff underwent electromyography ("EMG")[2] and nerve conduction studies, which revealed "prolonged median motor latencies at the wrist" and "denervation activity . . . consistent with the median nerve entrapments," as well as denervation activity of the left biceps consistent with left C6 root irritation (Tr. 160).  Dr. Feussner reported that Plaintiff would benefit from massage therapy and ultrasound treatments (Tr. 161).  He prescribed a trial of Neurontin and Vitamin B6 and stated Plaintiff needed to be on permanent light duty work restrictions due to her neck and wrists (Tr. 161).

On November 10, 2003, Plaintiff appeared for a follow-up visit with Dr. Feussner (Tr. 158). Plaintiff reported the use of splints provided her with a slight improvement in her symptoms (Tr. 158).  Plaintiff also reported that she did not want to consider surgery (Tr. 158).  Dr. Feussner noted that Plaintiff "should try to find a job within the restrictions for her neck and wrist" and noted Plaintiff did not have any other restrictions (Tr. 158).  The restrictions noted for Plaintiff's neck were: light duty with no overhead work, no flexion or extension movements of the head or neck, no prolonged sitting with head in the same

---

[2]Electromyography is a test performed with thin needle electrodes that checks the health of the muscles and the nerves that control the muscles.  MEDLINEPLUS, http://www.nlm.nih.gov/medlineplus/ency/article/003929.htm (Mar. 29, 2011).  It should be noted that the judiciary does not exercise responsibility over the content or current viability of the URL provided.

position, and no lifting greater than thirty to forty pounds (Tr. 157). The restrictions with respect to Plaintiff's wrist were: no repetitive movements of the wrists or hands and no lifting greater than thirty pounds (Tr. 157). On June 11, 2004, Dr. Feussner determined Plaintiff was at maximum medical improvement ("MMI") and assessed an impairment rating of no more than six percent for Plaintiff's neck (Tr. 213). Dr. Feussner believed Plaintiff should remain on permanent restricted work duty for her neck (Tr. 213).

On July 28, 2004, Plaintiff presented to Bruce Steinberg, M.D. ("Dr. Steinberg") at the Jacksonville Orthopaedic Institute for an initial evaluation (Tr. 230-33). On August 12, 2004, Plaintiff underwent electrodiagnostic testing, which was significant for findings of right carpal tunnel syndrome, but which was normal on the left side (Tr. 226). On August 20, 2004, Plaintiff elected to have bilateral carpal tunnel injections and, at that time, Dr. Steinberg stated Plaintiff could work so long as she took a ten minute break for each hour of repetitive activity (Tr. 225). On September 24, 2004, Dr. Steinberg obtained x-rays of Plaintiff's hands, which revealed first carpometacarpal ("CMC") joint arthritis (Tr. 224). On November 9, 2004, Dr. Steinberg performed a right-sided endoscopic carpal tunnel release and left thumb first CMC joint injection (Tr. 222).

Plaintiff appeared for a follow-up appointment on March 16, 2005, and reported minimal tenderness within her palm and complete resolution of the numbness and tingling of the median nerve distribution on her right hand (Tr. 221). Plaintiff, however, reported numbness and tingling of her left hand (Tr. 221). Dr. Steinberg stated Plaintiff had left-sided carpal tunnel syndrome and expressed a desire to perform surgery on her left hand (Tr. 220). Plaintiff underwent a left-sided endoscopic carpal tunnel release on May 24, 2005 (Tr. 219). At her follow-up visit on July 1, 2005, Dr. Steinberg reported Plaintiff's

numbness and tingling in her left hand had "all but resolved" (Tr. 218). On August 3, 2005, Dr. Steinberg found Plaintiff reached maximum medical improvement with a one percent whole person impairment rating (Tr. 216). He discharged her from the clinic and placed her at "full duty," which he later modified to accommodate a ten minute break for each hour of repetitive activity (Tr. 216).

On June 2, 2005, Plaintiff returned to Dr. Cauthen after "an unaccountable absence" and complained of right upper extremity numbness and pain (Tr. 261-62). Plaintiff underwent a cervical myelogram, which revealed "right C6-C7 lateral mass screw impinging upon the nerve foramen" (Tr. 260). On August 18, 2005, Dr. Cauthen, performed surgery to remove the aforementioned surgical screw, which he noted was impinging upon Plaintiff's C8 nerve root (Tr. 195). The following day, on August 19, 2005, Dr. Cauthen completed a Clinical Assessment of Pain by Treating Physician (Tr. 198-203). In the assessment, Dr. Cauthen noted Plaintiff's self described pain as "moderate," which is referred to on the assessment form as pain that "would not significantly interfere with [her] working 8 hours a day 5 days a week, assuming a 15 minute break in the morning and afternoon and a 30 minute lunch break" (Tr. 200). Dr. Cauthen additionally reported that, based on his objective findings, Plaintiff's pain is "moderate," which was accompanied by the same description of a lack of significant work restrictions as noted above (Tr. 201).

Dr. Cauthen found Plaintiff to have "moderate" restrictions in her ability to "maintain attention and concentration for extended periods[–] i.e., more than 5-10 minutes at a time"; "perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances"; "complete a normal workday and workweek without interruptions from pain and to perform at a consistent pace without an unreasonable number and length

of rest periods"; and "interact appropriately with the general public" (Tr. 202).

Also on August 19, 2005, Dr. Cauthen completed a RFC Evaluation form, in which he made the following findings: in a job requiring Plaintiff to remain seated, Plaintiff could work for a total of three to four hours per day, five days per week, with a five minute stretch break every hour (Tr. 204); in a job requiring Plaintiff to remain standing, Plaintiff could work for a total of one to two hours per day, five days per week, with a five minute stretch break every hour (Tr. 205); and, in a job with the option to stand or sit at will, Plaintiff could work for a total of one to two hours per day, five days per week (Tr. 205). Dr. Cauthen additionally noted that Plaintiff can "frequently" lift five to nine pounds, and that the maximum she can "occasionally" lift is five to nine pounds (Tr. 206).[3]

On August 16, 2005,[4] Dr. Feussner completed a RFC Evaluation form (Tr. 189-92). Dr. Feussner reported: in a job that required her to remain seated, Plaintiff could work a total of four to five hours per day, five days per week, with a five minute stretch break every hour; in a job that required her to remain standing, she could work for a total of four to five hours per day, five days per week, with a five minute stretch break every hour; and in a job with the option to stand or sit at will, Plaintiff could only work a total of five to six hours per day (Tr. 189-190). Dr. Feussner also reported that Plaintiff can "frequently" lift five to nine

---

[3] It should be noted that these findings are inherently inconsistent.

[4] The date accompanying Dr. Feussner's signature appears to be August 16, 2006 (see Tr. 192); however, the document also contains a separate, hand-written date of August 16, 2005 (Tr. 189). Further, the document is marked with what appears to be a facsimile transmission date of August 10, 2005 (see Tr. 189-92). While the parties' briefs reference the date as August 16, 2006 (see Doc. #17 at 7, Doc. #18 at 6), in light of the hand-written notation and what appears to be a facsimile transmission date, it seems the correct date in August 16, 2005.

9

pounds, and that the maximum she can "occasionally" lift is one to five pounds (Tr. 191).[5]

On November 30, 2005, Plaintiff returned to Dr. Steinberg, complaining of achiness and pain in her hands and thumbs (Tr. 215). Dr. Steinberg stated he had no further treatment recommendations and that Plaintiff had reached maximum medical improvement (Tr. 215). Dr. Steinberg again reported Plaintiff's work status as requiring a ten minute break for every one hour of repetitive activity (Tr. 215).

On March 15, 2007, Plaintiff visited Yili Zhou, M.D., Ph.D. ("Dr. Zhou") at Comprehensive Pain Management of North Florida (Tr. 452). Plaintiff complained of neck pain and described her daily pain score as three out of ten, with ten being the worst pain level (Tr. 452). Plaintiff described her pain as three out of ten again on April 19, 2007 (Tr. 453), June 18, 2007 (Tr. 454), and August 9, 2008 (Tr. 456). On August 14, 2008 and December 9, 2008 , Plaintiff described her daily pain score as four out of ten (Tr. 455, 457). Plaintiff described her daily pain as six out of ten on April 17, 2009 (Tr. 436), and as eight out of ten on January 20, 2009 (Tr. 437). On May 12, 2009, Plaintiff described her daily pain as three out of ten (Tr. 458).

## IV. Analysis

### A. Dr. Cauthen's Opinion

Plaintiff argues that the ALJ failed to give substantial weight to one of Plaintiff's treating physicians, Dr. Cauthen (Doc. #17 at 8). Specifically, Plaintiff argues that Dr. Cauthen's medical assessment as to Plaintiff's work-related limitations should have been given substantial, or controlling, weight by the ALJ with respect his RFC determination

---

[5]It should be noted that these findings are inherently inconsistent.

(Doc. #17 at 11-12). For the reasons provided herein, the undersigned is not persuaded by this argument.

The Regulations provide that, generally, more weight should be given to the opinion of a medical source who has examined a claimant than to the opinion of a non-examining source. 20 C.F.R. § 404.1527(d)(1).[6] The Regulations further instruct ALJs with respect to properly weighing the medical opinions of treating physicians. Specifically, the Regulations provide, in pertinent part, as follows:

> Generally, we give more weight to opinions from [a plaintiff's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a plaintiff's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2).

Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is due to be afforded great weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). Important to the determination of whether there is a "detailed, longitudinal picture" of a claimant's impairments is the length of the treatment relationship,[7] the frequency of examination, the

---

[6] As the Regulations for SSI disability payments mirror those set forth for DIB on the matters presented in this case, from this point forward the Court may refer only to those sections in 20 C.F.R. that pertain to part 404 and disability insurance benefits.

[7] Generally, the longer a treating source has treated a claimant and the more times a claimant has been seen by a treating source, the more weight that should be given to that source's medical opinion. 20 C.F.R. § 404.1527(d)(2)(i).

11

knowledge of the treating source as shown by the nature and extent of the treatment relationship, the evidence and explanation presented by the treating source to support his or her opinion, the consistency of the opinion with the record as a whole, and the specialization of the physician. 20 C.F.R. § 404.1527(d)(2)-(5).

In addition, it is well established in the Eleventh Circuit that, generally, substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is "good cause" to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991). The Eleventh Circuit has concluded "good cause" exists when a treating physician's opinion is: (1) not bolstered by the evidence; (2) contrary to the evidence; or (3) inconsistent with the treating physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). Moreover, an ALJ must state with particularity the weight given to the various medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279-89 (11th Cir. 1987).

A treating source opinion is only entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Edwards*, 937 F.2d at 582. Further, the ALJ may reject an opinion that lacks persuasive weight or is unsubstantiated by any clinical or laboratory findings. *Bloodsworth*, 703 F.2d at 1240. The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d at 583.

Here, the ALJ accurately stated Dr. Cauthen's opinion was inconsistent with the objective clinical findings, his own treatment notes, and the evidence as a whole (Tr. 369). The undersigned finds the ALJ's determination in this regard to be supported by substantial evidence.

More particularly, on August 19, 2005, Dr. Cauthen's Clinical Assessment of Pain by Treating Physician indicated Plaintiff's pain was "moderate" (as reported by Plaintiff and as found by Dr. Cauthen) (Tr. 200-01). "Moderate," as described on the assessment, is pain "that would not significantly interfere with [a claimant's] working 8 hours a day 5 days a week" (Tr. 200-01). Despite this finding, Dr. Cauthen reported that Plaintiff could only work one to two hours per day in a job which provided her a sit/stand option, three to four hours per day in a job that required her to remain seated, and one to two hours per day in a job that required her to stand (Tr. 204-205). Dr. Cauthen's findings in this regard are not congruent with his finding that Plaintiff reports only "moderate" pain symptoms and that his objective findings reveal only "moderate" pain symptoms (*see* Tr. 198-207). It should also be noted that Dr. Cauthen stated on both the Clinical Assessment of Pain by Treating Physician and the RFC Evaluation that his answers to the questions presented on those forms relate to the time period from August 29, 2002 to August 19, 2005 (Tr. 198; Tr. 204).

As noted above, "moderate" pain, as described, "would not significantly interfere with [Plaintiff] working 8 hours a day 5 days a week" (Tr. 200-01). The undersigned would note that Dr. Cauthen's "moderate" pain description here is incongruent with the description of "moderate" that was used in a subsequent section of the form, which described moderate as "seriously limited" in the areas of, *inter alia*, maintaining attention and concentration for more than five to ten minutes at a time, completing a normal workday without interruptions

from pain, and performing at a consistent pace without an unreasonable number of rest periods (Tr. 202). The Clinical Assessment of Pain by Treating Physician form does not appear to be a Social Security form, and was apparently provided to Dr. Cauthen by Plaintiff (*see* Tr. 198-203).

The ALJ stated in his decision that he gave Dr. Cauthen's opinion that Plaintiff cannot even work at the sedentary level "very limited weight" because it is inconsistent with the overall weight of the evidence, including the objective medical findings (Tr. 369).[8] The undersigned finds this statement to be supported by substantial evidence of record.

In particular, on August 7, 2003, Dr. Wright stated Plaintiff should be limited to light duty work due to her hands, and that she was not to engage in heavy lifting (Tr. 151). On a "Work Status Letter," dated November 10, 2003, Dr. Feussner noted that Plaintiff could return to work with the following restrictions: light duty with no overhead work, no flexion or extension movements of the head or neck, no prolonged sitting with head in the same position, and no lifting greater than thirty to forty pounds (Tr. 157). Dr. Feussner's stated restrictions for Plaintiff's wrist were: no repetitive movements of the wrists or hands and no lifting greater than thirty pounds (Tr. 157). On June 11, 2004, Dr. Feussner determined Plaintiff was at maximum medical improvement and gave her an impairment rating of no more than six percent for her neck (Tr. 213).

---

[8]Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally (approximately two hours of an eight-hour workday) and other sedentary criteria are met. 20 C.F.R. § 404.1567(a); *see also* SSR 83-10, 1983 WL 31251, at *5 (S.S.A. Nov. 30, 1982).

On March 9, 2004, Plaintiff reported to a state agency medical consultant that she could lift up to twenty pounds, had fair use of her hands, and was able to drive (Tr. 176).[9] Plaintiff had full strength in all extremities and full grip strength (Tr. 178). Plaintiff's balance and gait were normal and she was able to squat and rise (Tr. 178). Range of motion was reduced in the spine and hip, but normal in all other areas (Tr. 179-80). As the ALJ reasoned, Plaintiff's testimony about her daily activities also contradicts Dr. Cauthen's restrictive view of her limitations (Tr. 366, 369). Specifically, at the June 10, 2009 supplemental hearing, Plaintiff testified that she drives two to three times a week to go shopping (Tr. 465-66), reads novels and short stories (Tr. 479), uses a computer to check her email (Tr. 479), and takes care of her personal needs (Tr. 480-81).[10] Plaintiff also testified that she goes out with her friend to the AmVets Post two to three times a week and will "sit there and socialize" "for a couple of hours" (Tr. 480).

At her follow-up visit on July 1, 2005, after a left-sided endoscopic carpal tunnel release, Dr. Steinberg reported Plaintiff's numbness and tingling in her left hand had "all but resolved" (Tr. 218). On August 3, 2005, Dr. Steinberg found Plaintiff reached maximum medical improvement with a one percent whole person impairment (Tr. 216). He discharged her from the clinic and placed her at "full duty," which he later modified to a ten minute break for each hour of repetitive activity (Tr. 216).

From March 15, 2007 to May 12, 2009, Dr. Zhou's records reveal multiple occasions whereupon Plaintiff reported daily pain scores of three out of ten (*see* Tr. 452, 453, 454,

---

[9]It should be noted that Plaintiff reported, in her application for benefits, that she is unable to lift more than ten pounds (Tr. 119).

[10]In her application for benefits, Plaintiff reported she is "unable to use a keyboard or mouse" (Tr. 110).

15

456, 458). These self-reported pain scores are consistent with the "moderate" level of pain Dr. Cauthen noted, *supra*.

Based on the foregoing, the undersigned finds the ALJ's reasons for not giving controlling weight to Dr. Cauthen's opinion that Plaintiff is totally disabled is supported by substantial evidence of record.

It should also be noted that the ALJ fully complied with this Court's prior Remand Order, *Watkins v. Astrue*, 3:07-cv-1079-J-16MCR (M.D. Fla. Jan. 22, 2009) (Doc. #19 at 2), which directed, in pertinent part, that the ALJ articulate the weight afforded to Plaintiff's treating physicians and any reasons for discrediting such opinions (*see* Tr. 369).

**B.     The Hypothetical Question Posed to the Vocational Expert**

Plaintiff argues that the ALJ's hypothetical question posed to the VE did not take into account all of Plaintiff's limitations (Doc. #17 at 15). Specifically, Plaintiff claims the ALJ erred by not including a limitation of three to four, thirty-minute breaks to allow for her to lie down during an eight-hour workday (Doc #17 at 16).[11] For the reasons that follow, the undersigned is not persuaded by this argument.

Before proceeding to steps four and five of the sequential evaluation process, the ALJ must assess a claimant's Residual Functional Capacity, which is described as the maximum amount of work a claimant can perform despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a). At step five of the sequential evaluation process, the ALJ considers the claimant's age, education, work experience, and

---

[11]At the 2009 hearing, Plaintiff's representative asked the VE whether an individual could perform the jobs identified by the VE if the individual were required to take two to three, thirty-minute breaks each day (Tr. 489).

RFC to determine whether the claimant can perform a significant number of jobs in the national economy. 20 C.F.R. §§ 404.1520(g), 404.1560(c); *Phillips*, 357 F.3d at 1239. This finding is typically accomplished through the testimony of a VE who is asked to consider a hypothetical individual with the same limitations contained in the claimant's found RFC. *Phillips*, 357 F.3d at 1240. The ALJ, however, is not required to include unsupported allegations in the hypothetical questions to the VE. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (finding an ALJ is not required to instruct the VE to assume conditions that he or she does not find exist.). The hypothetical question must "incorporate reasonably all disabilities of the claimant recognized by the ALJ." *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

Here, the ALJ asked the VE if any jobs existed in the national economy for an individual with Plaintiff's RFC (Tr. 486). Specifically, the ALJ inquired about a hypothetical individual who could occasionally climb, balance, stoop, kneel, crouch, and crawl; could occasionally use her arms for overhead reaching; must avoid repetitive use of the hands for pushing, pulling, and operating hand controls; must avoid concentrated exposure to vibration and hazards; and must alternate sitting and standing every thirty minutes (Tr. 486). The VE responded that a person with these limitations could perform sedentary jobs, such as a dispatcher, an appointment clerk, and an information clerk (Tr. 487-88). *See* UNITED STATES DEP'T OF LABOR, *Dictionary of Occupational Titles* §§ 239.367-010; 237.367-010; 237.367-022 (4th Ed. 1991). The VE further testified that the jobs he identified jobs existed in significant numbers in the local and national economy (Tr. 487-88).

Following the ALJ's hypothetical, Plaintiff's representative asked the VE whether an individual could still perform the jobs identified if the individual were further required to take

two to three, thirty-minute unscheduled breaks each day (Tr. 489). The VE responded that such a limitation would preclude the individual from performing any of the jobs the VE identified (Tr. 490).

Plaintiff argues the ALJ erred by not considering this further limitation (Doc. #17 at 15-17). In support of her contention in this regard, Plaintiff cites Dr. Feussner's August 16, 2005 RFC Evaluation; however, Dr. Feussner's assessment makes no reference to Plaintiff requiring multiple thirty-minute breaks (Doc. #17; *see* Tr. 189-92). In fact, Dr. Feussner's RFC opinion, taken as a whole, indicates Plaintiff has the ability to work at least eight hours per day when give only a five-minute stretch break every hour (*see* Tr. 189-92). In the Eleventh Circuit, an ALJ need not include all of a plaintiff's alleged limitations, but only those the ALJ accepts as credible and supported by the evidence in the record. *See Crawford*, 363 F.3d 1155 at 1161.[12] The ALJ stated he accounted for Plaintiff's need for short breaks by providing her the freedom to shift positions at will and to avoid the repetitive use of her hands for pushing or pulling (Tr. 369). The undersigned finds the record evidence supports this determination.

Based on the foregoing, the undersigned finds the ALJ did not commit error by posing a hypothetical question to the VE that included all of Plaintiff's limitations he found were supported by the record evidence.

---

[12]Plaintiff did not challenge the ALJ's credibility finding. Nevertheless, the undersigned finds substantial evidence supports the ALJ's determination that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms are not credible to the extent they conflict with the RFC (*see* Tr. 366-69).

## V.  Conclusion

Upon due consideration, the Court finds the decision of the Commissioner was decided according to proper legal standards and that it is supported by substantial evidence.  As neither reversal nor remand is warranted in this case, and for the aforementioned reasons, the decision of the ALJ is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file.  Each party shall bear its own fees and costs.

**DONE AND ORDERED** at Jacksonville, Florida this 31st day of March, 2011.

Copies to all counsel of record

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge